**CAPITOL AIRWAYS, INC., Plaintiff,**

v.

**The AIRLINE PILOTS ASSOCIATION INTERNATIONAL, Defendant.**

**Civ. A. No. 3493.**

United States District Court
M. D. Tennessee,
Nashville Division.

Oct. 18, 1963.

Judson Harwood, Nashville, Tenn., for plaintiff.

Cecil Branstetter, Nashville, Tenn., M. B. Wigderson and Harry Noe, Chicago, Ill., for defendant.

WILLIAM E. MILLER, Chief Judge.

This is an action for Declaratory Judgment brought under Title 28, Section 2201, U.S.C. The Capitol Airways System Board of Adjustment (herein referred to as Board), established in compliance with Section 204, Title II of the Railway Labor Act as amended (Title 45, Section 151 et seq., U.S.C.), has made the awards here involved in favor of the grievants, Riley, Hull, Gerhard, and Carlin, and against the plaintiff airline. The plaintiff seeks an adjudication that the four awards are invalid. Defendant counterclaims for enforcement of the four awards. Both parties have moved for summary judgment. The four awards present three different issues. which will be considered separately.

## RILEY AWARD

This award presents the question: of whether or not the Board could order payment of four months' pay (or not. less than $4800) without reinstatement, under these circumstances: Riley, among others, had worked for Aaxico. When Aaxico lost its government "Logair" contract to Capitol, Capitol agreed to hire the Aaxico pilots. An agreement was entered into which on its face purports to employ this group of pilots without reservation. However, according to an affidavit of Mr. Mack Rowe, a company official, it had been distinctly understood that Capitol would not continue to employ these pilots after the expiration of the then current government contract unless it was awarded a new Logair contract then being negotiated.[1]

---

1. Counsel for defendant raises the question of whether the Court can consider the affidavit of Mr. Rowe since it is in relation to the written contract of employment between Capitol and ALPA, and is thus "parol evidence". The contract, it is urged, shows on its face that Riley was included in the collective bargaining agreement, and this cannot be impeached by the affidavit. The Court does not consider this evidence inadmissible. This is in effect, if not in precise form, the situation presented in an example given by Professor Corbin:

"A writes out the terms of an agreement, signs it, and delivers it to B * * * saying * * * that he offers it for immediate acceptance, but that the promises contained therein are to be enforceable as a contract only in case event X happens. B accepts A's offer and signs the document. Here also it is almost universally held that B can enforce the contract against A only on condition that event X happens. In this case there is a valid contract, but the promises of one or both parties therein are subject to an extrinsic condition precedent which must be proved and is permitted to be proved by parol evidence." 3 Corbin on Contracts, Section 577(5), page 392.

Capitol did not get the contract and the Aaxico pilots were furloughed. However, Aaxico did get the contract and rather than rehire its old pilots, contracted with IASCO (a company organized to provide airline crews under contract) to fill its requirements for pilots. Riley and the other Aaxico pilots filed suit on August 24, 1961 in the Federal District Court at San Antonio, Texas asking for injunctive relief against Aaxico based on Aaxico's refusal to rehire them. In this suit the pilots were successful. These facts are admitted by the defendant.

On October 13, 1961, while Riley was flying for Riddle Airlines in Oklahoma, Capitol sent the following form letter to him:

> "Dear Mr. Riley: Please advise immediately if you will accept recall as co-pilot at San Antonio or Tinker. Duration is unknown at present and we will not grant leave of absence in lieu of recall."

Following receipt of this letter Riley left Riddle Airlines and returned to San Antonio. Mr. Rowe states that this was a form letter sent out to ascertain availability of pilots, and that it was sent to many more pilots than would have ultimately been needed. This is also not denied.

There are three "contracts" involved here: the Aaxico contract, the Capitol contract with the Aaxico pilots, and the letter of October 13, 1961, to Riley. It was apparently neither the theory of the defendant, Airline Pilots Association, (herein referred to as ALPA), nor Riley, nor the view of the Board, that this grievance was a result of the general employment contract between Capitol and the Aaxico group.[2] Based upon the evidence presented in the affidavit of Mr. Rowe, which is not denied by the defendant, the Court finds that Riley was not covered by the collective bargaining agreement after expiration of Capitol's Logair contract and its resumption by Aaxico.

The Board found in effect that the letter of October 13, 1961, was an offer of employment, that Riley accepted the offer, and that the acceptance constituted a contract which Capitol breached and for which damages were awarded. Since Riley was not then covered by the collective bargaining agreement, the question arises whether the Board had authority to determine the effect and validity of an alleged contract of employment—an individual contract between the employee and the company, and one outside the collective bargaining agreement. The answer must be in the negative.

The agreement to arbitrate states in paragraph (b):

> "[T]here is hereby established a System Board of Adjustment for the purpose of adjusting and deciding disputes which may arise under the terms of the Pilots' Agreement."

and in paragraph (e):

> "The Board shall have jurisdiction over disputes between any employee covered by the Pilots' Agreement and the Company, growing out of grievances or out of interpretation or application of any of the terms of the Pilots' Agreement."

The rule which limits the authority of the Board is found in a case cited by defendant—one of the "triumvirate" of Supreme Court opinions, to use defendant's term:

> "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrators' words manifest an infidelity to this obligation, courts have no choice but

---

2. As stated by the Board in its award, "It is evident that had the letter of October 13, 1961 never had [sic] been

send [sic] out these two cases would not now be pending before this board."

to refuse enforcement of the award." United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

Clearly the dispute as to whether the company offered employment to Riley in its letter of October 13, 1961, is outside the scope of the collective bargaining agreement. As such it is an issue or dispute which the company did not agree to submit to arbitration and for that reason the award is invalid

## HULL AND GERHARD AWARDS

■ In these two awards the Board found the employees guilty of the charges which resulted in their dismissal. Nevertheless, it ordered reinstatement without back pay on the basis that dismissal was too severe a punishment and not warranted under the circumstances. The question presented is whether or not in ordering reinstatement the Board, having found the employees guilty of the charges, exceeded its authority under the collective bargaining agreement and under the agreement establishing it and defining its powers and procedures.

The record presents more fully the facts underlying the Hull award.[3] In that case Hull was senior pilot on an overseas flight for Capitol from Frankfort, Germany to Philadelphia. Hull had purchased two musical instruments in Germany and on arrival in Philadelphia had persuaded a stewardess to declare them on her customs form. The Board found on the basis of the surrounding facts that Hull had been attempting to smuggle the instruments into the country and avoid paying the customs duty on them. The company dismissed Hull as a result of its investigation of the matter.[4] On appeal to the Board Hull was ordered reinstated with full seniority, but without back pay.

The company contends that the Board was without authority to order reinstatement without a finding that the charge of attempted smuggling was unfounded and thereby exonerating Hull. As the basis for its contention the company directs attention to Sections 26(c) (4) and (5) of the collective bargaining agreement:

(4) "If as a result of any hearing or appeal therefrom as provided herein, a pilot is exonerated, he shall, if he has been held out of service, be reinstated without loss of seniority and shall be paid for such time lost in an amount which he would have ordinarily earned had he been continued in service during such period."

(5) "If as a result of any hearing or appeal therefrom as provided herein the pilot shall be exonerated, the personnel records shall be cleared of the charges."

The company's rationale is that this is the only reference in the contract to reinstatement after discharge, and therefore should be controlling. In essence the argument is that because the words provide for reinstatement in event of exoneration, they imply that there can be no reinstatement without exoneration. There can be no question that Hull was not exonerated by the Board,[5] but there is no weight in the argument that by negative implication there can be no middle ground in which the Board may operate. It is not an "either/or" situation.

On the other hand, ALPA argues that the question presented to the Board in the Hull case was whether Hull had been

---

3. Gerhard refused to fly a ferry flight. The Board, partially exonerated him by finding that the company was to some degree also at fault in the matter.

4. The Operations Manual (incorporated by reference into the agreement), Chapter 3, Section 9, paragraph G(10), provides

in substance that, *inter alia*, a crew member may be dismissed for smuggling.

5. As stated by the Board: "6.1 There is no question in my mind that Hull did attempt to smuggle or bring the instruments into the country without paying duty on them. Every bid of evidence points in this direction."

discharged for "just cause", that an employee can insist that his discharge was without just cause and have the issue presented to the Board under this agreement, and that such questions are properly termed "grievances". Section 27 of the agreement provides:

> "Any pilot or group of pilots covered by this agreement who have a grievance concerning any action of the company affecting them, not settled in conference with company officials, shall be entitled to have such grievance handled in accordance with the procedure established in Section 26 hereof, for investigation and hearing or appeal."

and Section 21 provides:

> "Any pilot who resigns from the service of the company or is discharged *for just cause* will forfeit all seniority accrued to date of such resignation or discharge." (Emphasis supplied.)

The defendant argues that Section 21 illustrates that discharges are only to be for just cause, and that Section 27 in providing for arbitration of any "grievance concerning any action of the company affecting [him]" contemplates that the issue of justifiable discharge will be arbitrated.

The Ninth Circuit Court of Appeals in Operating Engineers Union Local No. 3 v. Crooks Brothers Tractor Co., 295 F.2d 282 (1961), held that under a collective bargaining agreement which provided that "[n]o employee shall suffer discharge without just cause", a discharge for subordination was a proper subject for a grievance proceeding. In reaching its conclusion the Court cited United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960):

> "An order to arbitrate the particular grievance [contracting out work] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Doubts

should be resolved in favor of coverage." At page 582, 80 S.Ct. at page 1353.

Although the agreement in the present case is not so explicit as to set out that no discharge should be without just cause, the language in the agreement is sufficiently broad to include the lack of just cause as a proper grievance. A decision of the company to discharge an employee for misconduct, even if the employee is guilty, may or may not be for just cause. If the offense and the circumstances accompanying it are sufficient to warrant such a penalty, just cause would exist, but it is also true that in many cases such a penalty may be excessive and unwarranted. The penalty actually imposed by the company is an "action of the company affecting" the employee and consequently constitutes the subject of a grievance as defined in Section 27 of the agreement.

Therefore, it cannot be said that the Board exceeded its authority in mitigating the punishment and ordering reinstatement without exonerating the employees.

### CARLIN AWARD

■ This award likewise could have involved the issue of whether the Board exceeded its authority in ordering reinstatement without exoneration. However, it raises the preliminary question which must be considered: From a procedural standpoint was the issue of Carlin's dismissal properly presented to the Board for its adjustment?

The Agreement provides in Section 26 (7):

> "If after the appeal provisions hereinbefore provided have been complied with, further appeal by the pilot, if made, shall be to the * * System Board of Adjustment, * * provided such appeal is made within thirty (30) days from the date of receipt by the pilot or his duly accredited representative, of the decision of the company."

The agreement which establishes the Board provides in Section (h) that:

"All disputes properly referred to the Board for consideration shall be addressed to the Chairman. * * * Each case submitted shall show:

"1. Question or questions at issue.

"2. Statement of facts.

"3. Position of employee or employees.

"4. Position of Company."

On May 3, 1962 a letter was sent to the Chairman Pro Tem of the Board by the President of ALPA submitting the grievance of Lawrence P. Carlin. In that letter the "Question at Issue" was stated as follows:

"Was the Company in violation of the Employment Agreement with respect to the Pay Section and related sections, when the Company failed to properly pay the grievant for December, 1961 and January, 1962 and, further, failure to reimburse him for expenses advanced to him on behalf of the Company while on duty?"

The letter of May 3, 1962 also asked that the Board determine three things by way of relief:

"1. That the Company was in violation of the Employment Agreement as herein set forth.

"2. That the grieving pilot be compensated for all losses monetary or other sustained by him in consequence of the alleged wrongful action of the Company; and

"3. That the grievant have such other, further or different relief as to the Board may be deemed just and proper."

On November 6, 1962 ALPA sent a second letter to the Board which was substantially identical to the letter of May 3, 1962, except the following was added to the end of the paragraph headed "Question at Issue":

"* * * and further, for removing him from the payroll on February 26, 1962 for reasons assigned by W. W. Ashley in his letter of February 26, 1962."

The following additional relief was inserted as item (2):

"That the grievant be reinstated with back pay and all attendant rights?"

The Board in its written award stated:

"This matter comes to be heard on the application of Captain L. J. Carlin in which he seeks to be reinstated with the company from date of discharge with all rights of seniority unimpaired.

"The facts are substantially as follows: Captain L. J. Carlin had been with the Capitol Air Ways, Inc. since 1956. He was dismissed by the company for alleged violations of the rules and regulations relating to conduct. The following questions are presented:

"(a) Was this matter properly before the Board of Adjustment?

*     *     *     *     *

"(d) Was there a change made in the letter introduced in evidence dated May 3, 1962 and subsequently corrected as of November 6, 1962 when a new paragraph was added and was this a violation of the Agreement and particularly did it come outside the time limit and injected [sic] new material into the dispute after the time limit had expired?"

The Board then disposed of these issues:

"(a) We hold that the matter in controversy was properly before the Board and that it had jurisdiction to hear the dispute and the appeal.

*     *     *     *     *     *

"(d) This Board is inclined to feel that there was an improper attempt to correct the letter of May 3 and that the letter of November 6 was filed out of time and cannot be giv-

en consideration. No satisfactory explanation was made to this Board at the hearing, although repeated efforts were made to obtain an explanation. The Board feels that this was outside the time limit by injecting new material into the controversy after the time had expired."

But, paragraph (d) to the contrary notwithstanding, the Board concerned itself primarily with Carlin's discharge and said in paragraph (c):

"Yes, the discharge was justified, but the penalty imposed was too severe and he should have been suspended for a period of time instead of complete dismissal."

The Board then proceeded to order:

" * * * that Captain L. J. Carlin be and he is hereby ordered to be reinstated as of this date but with no pay for time lost. Captain Carlin is also entitled to reinstatement with seniority rights and its attendant privileges."

No cases or authorities have been cited to the Court which have a direct bearing on this problem. It seems reasonable to assume that ALPA in its letter of May 3 simply overlooked including the matter of discharge and reinstatement which was subsequently included in the later letter. However, it could just as well have been that ALPA deliberately did not include this matter in the first letter, and only later decided to pursue reinstatement. In either event Carlin had been dismissed in February and apparently his dismissal had been negotiated at the preliminary level prior to appeal to the Board.

Did the Board have authority to consider the question of Carlin's dismissal and order reinstatement? It may be that in some instances circumstances would permit an amendment to present issues not set forth in a timely letter of notice of appeal to the Board. However, the grievant offered the Board no explanation and no justification for ALPA's attempt to present the issue of dismissal

for the first time six months after the original letter. The Board itself found that the matter presented by the letter of November 6 was untimely and an improper attempt to correct the letter of May 3, and could not be given consideration.

ALPA stands on the written award of the Board and has not presented to the Court any sound reason to establish the authority of the Board to consider an issue which was raised long after expiration of the contractual time limitation. No facts are shown to suggest the possibility of a waiver or to excuse for any reason the failure to raise the issue of dismissal within the agreed time. Nor are any facts developed to show that this was a situation in which the Board may have been warranted in considering the November letter as an amendment which related back to the original letter. It is simply a situation, as the Board stated, of an unexplained delay. The second letter therefore clearly cannot be considered in determining the validity of the award of the Board in the Carlin case.

The two issues, the company's refusal to pay grievant for two months and its failure to reimburse him for his expenses, properly presented to the Board in the letter of May 3, 1962, were the only issues which the Board had authority to determine and any relief granted by it could relate solely to these actions of the company. Thus the Board was without authority to order reinstatement of the grievant.

Accordingly, the plaintiff's motion for summary judgment on its complaint will be granted as to the Riley and Carlin awards, and will be denied as to the Hull and Gerhard awards. The defendant's motion for summary judgment on its counterclaim for enforcement of the Hull and Gerhard awards will be granted and denied as to the Riley and Carlin awards.

An order consistent with this opinion will be submitted for the approval of the Court.